IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–02961–RBJ–KMT

JUVENCIA DARSHA TOWNSEND,

      Plaintiff,

v.

EVERYINGHAM, Case Manager,
ROATCH, Case Manager,
DURAN, Case Manager,
JOHN C. ROBERTS, Corrections Officer,
SGT. TONYA GAMBLIN, Housing,
SGT. TODD CHRIST,
CAPTAIN MARK ALHOLTZ, Housing,
MAJOR BRIAN MCFEE, Housing,
LT. TRAXLER, Head Case Manager,
JACKSON, Case Manager,
DAVID JOHNSON, Warden,
DEETS, Case Manager,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendants' Motion to Dismiss, Or Alternatively,

Motion for Summary Judgment as to Plaintiff's Amended Complaint" (Doc. No. 54 [Mot.], filed

July 2, 2015). Plaintiff filed her response on October 27, 2015 (Doc. No. 70 [Resp.]), and

Defendants filed their reply on November 10, 2015 (Doc. No. 73 [Reply]).

**STATEMENT OF CASE**

Plaintiff, proceeding *pro* se, alleges two remaining claims in her Complaint.[1]  In Claim

Two, Plaintiff alleges she was terminated from her prison job in November 2011 and harassed in

retaliation for reporting a correctional officer who allegedly filed a false disciplinary report

against her; she was terminated from her prison job in August 2013 in retaliation for filing

grievances and advocating for other offenders; and she was placed in segregation for two weeks

in September 2013 after refusing a transfer.  (*See* Doc. No. 28 [Compl.] at 14–16.)  In Claim

Three, Plaintiff again alleges she was denied equal protection when she was terminated from her

prison job in 2013.  (*See id.* at 17–18.)  Both claims arise out of Plaintiff's incarceration at the

Denver Women's Correctional Facility ("DWCF") in the Colorado Department of Corrections

("CDOC").  (*Id.* at 5.)  Plaintiff seeks damages from Defendants in their individual and official

capacities, an order directing the CDOC to provide better training, and for the CDOC to conduct

a thorough investigation when an offender makes retaliation, harassment, and discrimination

claims.  (*Id.*at 21.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The moving party bears the initial burden of showing an absence of evidence to support

the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the

moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*,

---

[1] Senior District Judge Lewis T. Babcock dismissed Plaintiff's Claim One for due process
violations as legally frivolous.  (*See* Doc. No. 30 at 5.)

36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the

evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*,

477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible

evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).  The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United

States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Defendants move for summary judgment on Plaintiff's claims for failure to exhaust her

administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. §

1997e(a).[2]

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate

suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*,

532 U.S. 731, 731–32 (2001) (PLRA requires exhaustion in all matters regardless of remedy

sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies

before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is

no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*,

549 U.S. at 210–212 ("There is no question that exhaustion is mandatory under the PLRA and

that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an

inmate must properly comply with grievance procedures; substantial compliance is insufficient."

*Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust

---

[2] Defendants also move to dismiss Plaintiff's claims on other grounds. (*See* Mot.) The court need not address the arguments in the Motion to Dismiss as it recommends, *infra*, that the Motion for Summary Judgment be granted.

administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted).  Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies.  *Id.*, 549 U.S. at 218 (citation omitted).  After *Jones v. Bock*, a failure to exhaust administrative remedies constitutes an affirmative defense which must proved by defendants.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

The CDOC provides inmates with administrative remedies in the form of a grievance process set forth in CDOC Administrative Regulation (AR) 850-04.  (*See* Mot., Aff. of A. DeCesaro [Doc. No. 54-1], ¶ 4; [Doc. No. 54-2  [AR 850-04].)  Under AR 850-04 inmates must grieve any alleged injuries or unlawful conduct by pursuing a three-step process:  (1) attempt to resolve the issue or complaint by filing a Step One grievance within 30 days of the discovery of the issue or complaint; (2) if the inmate is not satisfied with the response/resolution of his Step One grievance, she must file a Step Two grievance within five days of receipt of the written response to her  Step One grievance; (3) if the inmate is still not satisfied with the response/resolution of her  grievance, she must file a Step Three grievance within five days of receipt of the written response to his Step Two grievance; and (4) if an inmate fails to timely file any grievance within the time periods provided by the grievance process, she has failed to comply with AR 850-04 or to exhaust her administrative remedies.  (*Id*. ¶¶ 5–9.)

Plaintiff alleges that in November of 2011, she was terminated from working as an offender care aid in the prison infirmary and written up for speaking to the male offenders after

being instructed not to.  (*See* Compl. at 5–10.)  Plaintiff grieved this issue in grievance R-DW

11/12-00010508.  (*See* Mot., Ex. A-1, Attach. 2.)  However, the evidence shows that Plaintiff

failed to properly avail herself of the prison's grievance procedure in R-DW 11/12-00010508,

because she failed to timely file her Step 2 grievance within five days of receiving the response

to the Step I.  (*See id.*, ¶ 7 (must file within 5 days), ¶ 15 (failed to comply with procedures in

AR 850-04), and ¶¶ 18–19 ("Step 1 response [served] on 9/21/11 and [Townsend] did not file the

Step 2 until 1/29/12").)  This grievance also was procedurally deficient because it sought a

remedy which was not available and because Plaintiff included multiple lines of text into a single

line, rendering it illegible.  (*Id.*)  As a result, the job termination issue was not properly

exhausted.

Plaintiff alleges in November of 2012, Defendant Gamblin harassed Plaintiff verbally and

threatened to have her terminated from her prison job.  (*See* Compl.  at 12.)  Plaintiff grieved a

related issue in grievance R-DW 12/13-00033491.  (*See* Mot., Ex. A-1, Attach. 2.)  However, the

grievance does not raise the issue of a job termination by Defendant Gamblin but instead focuses

on living unit placement.  (*Id.*)  Thus, this grievance was procedurally deficient because it sought

to grieve a classification and placement decision.  (*Id.* ¶¶ 20–21; *compare with* Ex. A-1, Attach

1, AR 850-04(IV)(D)(2)(b) ["Classification is entirely at the discretion of the administrative head

and classification committee of each facility" and the "grievance procedure **may not** be used to

seek review . . . ."] [emphasis in original].)

Finally, Plaintiff alleges in August of 2013, she was terminated from her job as an

offender care aid by the job board for what she believes was a pretextual reason pertaining to her

history of violence.  (*See* Compl. at 8–9, 11, 13, and 15.)  Plaintiff grieved this issue in grievance

R-DW 13/14-00044998.  (*See* Mot., Ex. A-1, Attach. 2.)  However, Plaintiff failed to properly

avail herself of the prison's grievance procedure in R-DW 13/14-00044998 because she failed to

timely file her Step 2 grievance within five days of receiving the response to the Step I. (*See* Ex.

A-1 ¶ 7 (must file within 5 days), ¶ 15 (failed to comply with procedures in 850-04), and ¶¶ 16-

17 ("Ms. Townsend received her Step 1 response on 9/10/13 and did not file the Step 2 until

9/30/15").)  The court finds that Plaintiff failed to exhaust her administrative remedies as to her

claims.

In response to Defendants' motion, Plaintiff appears to concede she did not exhaust her

administrative remedies but contends that she should be allowed some latitude in the grievance

process.  (*See* Resp. at 18-20.)  In support of this contention, Plaintiff appears to misunderstand

Justice Breyer's concurrence with the Supreme Court's opinion in *Woodford v. Ngo*, 548 U.S. 81

(2006).  (*See id.*)  Plaintiff argues that "administrative law contains well established exceptions

to exhaust" including exceptions for constitutional claims, futility of exhaustion, hardships, and

habeas corpus cases.  (Resp. at 19.)  In *Woodford*, the Court held that the PLRA's exhaustion

requirement requires proper exhaustion of administrative remedies.  *Woodford*, 548 U.S. at 87–

103.  In his concurrence, Justice Breyer opined that "Congress [did not] desire[] a system in

which prisoners could elect to bypass prison grievance systems without consequences."  548

U.S. at 103.  Justice Breyer then distinguished the PLRA's exhaustion requirement with

administrative law and its exceptions to exhaustion.  (*See id.*)  However, this case is not an

administrative law case, and the exceptions listed by Justice Breyer related to administrative law

do not apply here.

Justice Breyer also suggested that, "on remand, the lower court should . . . consider any challenges . . . concerning whether [the] case falls into a traditional exception that the [PLRA] implicitly incorporates." (*Id.*) Referring to this suggestion, Plaintiff appears to assert that the administrative remedies were not available to her or that the defendants may have kept her from completing the grievance procedures. (*See* Resp. at 20–22.)

In order overcome her failure to exhaust, Plaintiff must demonstrate that administrative remedies were unavailable. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). A remedy is unavailable when prison officials hinder, thwart, or prevent an inmate's attempts to exhaust that remedy. *Tuckel*, 660 F.3d at 1252. To make this showing, Plaintiff must prove (1) that the threat or intimidation actually did deter him from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the prison administrative process. 660 F.3d at 1254.

Plaintiff argues "it was not my fault but the fault of my old Casemanager [sic] . . . why my grievances were filed out of time." (Doc. No. 69-1 at 35.) Plaintiff also attaches a Request for Interview dated April 1, 2012, in which she requests an audience with a step 3 grievance officer to discuss her failure to complete the step 3 grievance because her case manager had been on vacation for a couple of weeks. (*Id.* at 36.) However, Plaintiff fails to allege or argue that any prison official "hinder[ed], thwart[ed], or prevent[ed]" her from lodging a grievance by "threat or intimidation." *Tuckel*, 660 F.3d at 1252. Moreover, in response to Plaintiff's Request for Interview, the grievance officer advised Plaintiff that "[o]ut of time was only one reason [her] grievance was not exhausted." (Doc. No. 69-1 at 39.)

The undisputed record shows that Plaintiff did not exhaust her administrative remedies as to her claims. Therefore, Defendants are entitled to summary judgment.

## CONCLUSION

Based on the foregoing, this court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss, Or Alternatively, Motion for Summary Judgment as to Plaintiff's Amended Complaint" (Doc. No. 54) be **GRANTED.**

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a

party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

10